GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

| | |
|---|---|
| A. RICHARD PHILPOTT | 3599-0 |
| rphilpott@goodsill.com | |
| CAROLYN K. GUGELYK | 6276-0 |
| cgugelyk@goodsill.com | |
| LIANN Y. EBESUGAWA | 7955-0 |
| lebesugawa@goodsill.com | |

Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawaii 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 5 2006

at 6 o'clock and 45 min PM
SUE BEITIA, CLERK

Attorneys for Defendant
ST. FRANCIS MEDICAL CENTER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARA LOESER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ST. FRANCIS MEDICAL CENTER,<br><br>　　　　　Defendant. | CIVIL NO. 04-00474 DAE/KSC<br><br>DEFENDANT ST. FRANCIS MEDICAL CENTER'S SEPARATE CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; DECLARATION OF COUNSEL; HASHIMOTO DECLARATION; EXHIBITS A - J; CERTIFICATE OF SERVICE<br><br>DATE:<br>TIME:<br>JUDGE:<br><br>TRIAL: JULY 18, 2006 |

1227720.3

## DEFENDANT ST. FRANCIS MEDICAL CENTER'S SEPARATE CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant ST. FRANCIS MEDICAL CENTER, by and through its attorneys, Goodsill Anderson Quinn & Stifel, hereby submits its statement of material facts, assumed to be true only for the purposes of its motion, in support of its motion for summary judgment.

| FACTS | SUPPORT |
|---|---|
| 1. Plaintiff was a Pharmacy Technician up to December 2000. Her duties included accurately filling and delivering prescribed medications. The job required responding to unpredictable emergency requests. | *In re Hawaii Teamsters & Allied Workers, Local 996, IBT on behalf of Cara Loeser v. St. Francis Medical Center* transcript of proceedings (Ex.A) at 13:2-25; 14:1-25; 15:1-11; 97:21-24, Plaintiff's Deposition (Ex.B) at 83:1-9; 171:8-13; 172:16-25; 173:1-6. |
| 2. Plaintiff notified Defendant she had Multiple Sclerosis in 1998. | Complaint at ¶ 10 |
| 3. Plaintiff experienced symptoms like paresthesia, weakness, numbness, sensory loss, dizziness, and loss of vision, speech, hearing, and awareness of self/surrounds. | Exhibit 26 at p.2 of Ex.B.; Ex. B at 201:25; 202:1-25; 203:1-14 |
| 4. Defendant provided Plaintiff with light duty from November 1999 to December 2000 including: (1) a regular non-rotating shift; (2) no lifting over twenty pounds; (3) restricted duties such as limited delivery functions; and (4) more clerical functions. | Ex.B at 128:19-25; 129:1-25; Ex.A at 109:1-18; Ex.B at 72:16-24; 85:8-18; 86:10-24; 111:21-25; 113:25, 114:1-16; 115:14-23; 116; 1-4; 165:13-17; 191:1-9; 197:7-11; Ex.A at 110:6-22; 111:17-25; 112-1-15; 14:6-24; 108:11-25, 18-21, 22-25; 109-:1-2; Ex.B at 61:2-22. |

| | |
|---|---|
| 5. Plaintiff's condition interfered with her ability to safely perform her job by accurately preparing medications. Her condition resulted in errors in filling of medications. | Ex.B at 56:10-19; 57:2-17; 61:11-22; 171:7-19. |
| 6. The unpredictable nature of her symptoms made it difficult for her to request assistance. Her difficulty responding to emergency situations like organ transplants resulted in errors, complaints and delays. | Ex.B at 81:20-25; 82:1-16; 160:9-10, 21-23; 169:1-10, 14-22; 172:16-25; 173:1-6. |
| 7. Plaintiff's symptoms occurred suddenly and unpredictably. | Ex.B at 171:16-19; 173:7-9. |
| 8. While working in the pharmacy Plaintiff would be unable to move. | Ex.B at 171:17-19. |
| 9. Heaviness in her arm caused her to drop and shatter equipment costing over thousands of dollars. | Ex.B at 56:22-24; 68:13-18. |
| 10. She had unpredictable symptoms on a daily basis, including loss of judgment. This included incidents of confusion and disorientation. | Ex.B at 68:19-25; 69:1-5; 168:25; 169:1-10. |
| 11. Plaintiff testified in 2002 that her coworkers in the pharmacy department never expressed any displeasure to her regarding her performance deficiencies. | Ex.A at 113:7-12. |
| 12. In 2005, Plaintiff testified her coworkers resented her because she did not have to rotate. She complained to her supervisor who suggested she apply for a clerical position. | Ex.B at 62:7-10; 70:12-15; 188:5-10, 15-17; 169:23-25; 170:1-3; 190:10-20. |

3

| | |
|---|---|
| 13. Plaintiff voluntarily chose to bid for and was accepted into the position of Admissions Registrar on December 4, 2000. | Ex.A at 98:22-25; 99:1-7; 113:12-15; 114: 1-2; Ex. B at 73:21-25; 74:1; 86:25; 87:1-4. |
| 14. Plaintiff was given a seniority advantage over other applicants as an accommodation. The position was also at the same rate of pay as her prior position and included a more desirable morning shift. | Ex. B at 191:4-9; 197:7-11. |
| 15. Plaintiff experienced disorientation where she wouldn't be able to recall sitting down or where documents came from. | Ex.B 89:14-17, 19-22. |
| 16. Plaintiff's symptoms interfered with her ability to respond to emergencies and to work quickly, which also resulted in interruption and delay of service to patients. | Ex.B 185:9-20; 214:24-25; 215:1-8. |
| 17. Plaintiff felt that when she was unable to receive information from patients, she should have been allowed to tell patients she would call them back. | Ex.B at 215:3-8. |
| 18. The unpredictable nature of her symptoms made it impossible for her to ask for help from management in advance. | Ex.B at 186:4-10. |
| 19. Within four weeks, Plaintiff's fellow admissions registrars made her aware of performance concerns, but they were cooperative in providing her with additional training. | Ex.A at 113:3-16; 114:3-7. |

| | |
|---|---|
| 20. Three years later, Plaintiff testified that coworkers would approach her and tell her that because she was unable to "do a certain responsibility" it made them "overloaded with work." She also said she wasn't given adequate training. | Ex.B at 141:17-25; 142:1-7; 191:19-23; 194:20-25; 195:1-7. |
| 21. Plaintiff testified that she did not bring those comments made by coworkers to her supervisor's attention. | Ex.B at 195:10-25. |
| 22. Due to failure to improve and inability to perform, Plaintiff was placed on vacation on March 31, 2001 and given assistance in obtaining another job with Defendant. | Ex.A at 47:17-27; 48:1-4; 50:2-4; 51:18-25; 52:7-9; Ex.B at 213:19-25; 214:1-10. |
| 23. Although Defendant assisted Plaintiff in seeking another position, Plaintiff was unsuccessful and Plaintiff's employment was terminated on July 31, 2001. | Ex.A at 48: 7-10, 63: 24-25, 64: 1, 79: 8-16; Ex.B at 146:24-25; 147:1-2; Ex. D & E. |
| 24. Plaintiff applied for a position as Patient Account Processor, but this position required a detailed understanding of patients' medical insurance coverages, functions Plaintiff couldn't perform as Admissions Registrar. She also applied for Medical Records positions, which also required accurate record-keeping and attention to detail. St. Francis selected more qualified applicants. | Declaration of Susan Hashimoto; Exs. D & E; Ex.B at 77:18-25; 184:7-14. |

| | |
|---|---|
| 25. After March 31, 2001, Plaintiff never asked to be returned to the Pharmacy Technician position. | Ex.A at 50:23-25; 51:1-4; 114:17-25; 115:1-4. |
| 26. Plaintiff felt she could have returned to pharmacy dept. with accommodations of (1) a personal assistant; (2) reallocation of job functions; and (3) creation of a brand new position. | Ex.B at 72:23-25; 73:1-2; 82:12-14; 157:4-10, 18-22; 159:18-25; 160:1-25; 161:1-6.: 173:19-25; 174:1-8; 187:5-12. |
| 27. A personal assistant would have been a hardship on Defendant given its staffing shortages and budget constraints. | Ex.B at 59:25; 60:1-4; 83:18-25; 84:1-3 |
| 28. In 2001 & 2002, St. Francis had no excess of resources; lost $22 million last fiscal year, estimated it would lose five to six at the end of 2002 fiscal year; was in the red; and work force had contracted significantly. | Ex.A at 64:7-20. |
| 29. In subsequent employment, Plaintiff had difficulty performing even light duty on a part-time basis and simple cashiering jobs. | Ex.B at 30:10-15, 18-22; 31:1-6; 32:3-12, 12-16; 33:9-25; 34:1-6; 35:22-25; 36:1-12; 38:18-22; 41:5-9; 42:17-25; 43:1; 46:1-12. |
| 30. On October 9, 2001, Plaintiff filed a charge of discrimination which made no reference to a hostile work environment or to harassment. HCRC issued a "no cause finding." | Exs. F & J. |
| 31. Plaintiff applied for Social Security Disability benefits on December 19, 2002, and represented that she was unable to work. | Ex. H; Ex.A at 63:24. |

6

32. The SSA determined that Plaintiff was permanently and totally disabled from working as of July 31, 2001, the date that her employment with Defendant ended.     Ex. I.

DATED: Honolulu, Hawaii, February 15, 2006.

/s/ Carolyn K. Gugelyk
A. RICHARD PHILPOTT
CAROLYN K. GUGELYK
LIANN Y. EBESUGAWA
Attorneys for Defendant
ST. FRANCIS MEDICAL CENTER